Joe SHANE, Plaintiff–Appellant,

v.

BUNZL DISTRIBUTION USA, INC., Defendant–Appellee.

No. 05–5381.

United States Court of Appeals, Sixth Circuit.

Aug. 25, 2006.

Before: KENNEDY, MOORE, and SUTTON, Circuit Judges.

## OPINION

KAREN NELSON MOORE, Circuit Judge.

Plaintiff–Appellant Joe Shane brought this lawsuit against Defendant–Appellee Bunzl Distribution, USA, Inc. alleging breach of contract, quasi-contractual claims, and fraud. The dispute arose out of an agreement whereby Shane agreed to assist Bunzl in securing Wal–Mart as a client for Bunzl's paper and packaging supplies in exchange for payment of a commission to Shane on any products sold to Wal–Mart. The district court dismissed nearly all of Shane's claims, first through a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss and later by granting Bunzl's motion for summary judgment. Shane's remaining claims were submitted to a jury, which ultimately found for Bunzl. Shane now appeals several final orders of the district court, arguing that the court erred in dismissing the bulk of his claims and also abused its discretion in its rulings about discovery and pleadings. For the following reasons, we **AFFIRM** the district court's dismissal of Shane's contract, fraud, and quasi-contractual claims, as well as the district court's denial of Shane's motion for additional discovery time. We conclude that the district court's summary denial of Shane's motion for leave to file a third amended complaint was an abuse of discretion, and so we **VACATE** that order and **REMAND** this issue to the district court for further consideration.

## I. BACKGROUND

Joe Shane is a citizen of Kentucky. Bunzl Distribution USA, Inc. is a Delaware corporation with its principal place of business in St. Louis, Missouri. Bunzl supplies "disposable paper and plastic packaging supplies to an array of businesses and industries, including supermar-ket retailers, self distributing chains, and wholesalers, as well as food processors, restaurants, institutions, airline and industrial markets." Joint Appendix ("J.A.") at 46 (Second Amd. Compl. at ¶ 7). Shane and Bunzl entered into an agreement whereby Shane, who had connections with Wal–Mart, would introduce Bunzl to Wal–Mart executives and assist Bunzl in obtaining Wal–Mart as a purchaser of its packaging supplies in exchange for a percentage of any business that Bunzl secured with Wal–Mart. On May 5, 1995, Bunzl executed and sent a letter to Shane that "confirm[ed] [their] brokerage arrangement going forward." J.A. at 224 (May 5, 1995 Letter at 1). In the letter, Bunzl stated that it would pay Shane a commission of .75% of any Mexico sales to Wal–Mart on items carrying a 12% gross margin or less. Bunzl agreed to pay Shane a commission of 1.25% of sales on items carrying a gross margin of over 12%. J.A. at 224 (May 5, 1995 Letter at 1); J.A. at 46 (Second Amd. Compl. at ¶ 9). The May 1995 letter did not specify a commission rate for domestic sales to Wal–Mart Super Centers, though it stated that Bunzl believed "the commission rate would be the same" for domestic sales but needed to have more discussion on the subject with Shane "before any commitments can be made." J.A. at 225 (May 5, 1995 Letter at 2).

Bunzl paid Shane commissions on its sales to Wal–Mart on a monthly basis between 1994 and January 15, 2001. J.A. at 47 (Second Amd. Compl. at ¶¶ 10–11). Bunzl states that it has paid Shane $1.6 million in commissions pursuant to the May 1995 agreement. Appellee Br. at 9. In a letter dated October 27, 2000, Bunzl notified Shane that his commission rate on domestic and Mexican net sales would drop from .75% to .50% effective January 1, 2001, and stated that Bunzl would continue to pay Shane's commissions "on a

monthly basis per the current arrangement." J.A. at 285 (Oct. 27, 2000 Letter from Bunzl to Shane). In December 2000, Bunzl sent Shane a Representative Agreement with this new .50% commission rate, to be effective for the year 2001. J.A. at 286–87 (Rep.Agreement). Shane did agree to the reduced commission rate stated in the October 27, 2000 letter, but Shane alleges that this agreement "was made under duress or by coercion and without consideration," and that, in the alternative, "the terms of the October 27, 2000 correspondence created a novation or a modification of the terms of the existing agreement." J.A. at 48 (Second Amd. Compl. at ¶¶ 18–19). Shane "refused to execute the Representative Agreement." *Id.* at 47 (Second Amd. Compl. at ¶ 17).

In early April 2001, Shane filed suit in Kentucky state court alleging that Bunzl was in breach of its contract with Shane and that Bunzl was unjustly enriched. On May 4, 2001, Bunzl filed a notice of removal, and the case was subsequently removed to the United States District Court for the Western District of Kentucky. On May 9, 2001, Bunzl sent Shane a letter terminating its relationship with Shane, citing Shane's refusal to sign the December 2000 Representative Agreement and Shane's recently-filed lawsuit. Bunzl informed Shane that it would pay him commissions through April 2, 2001, which it claimed "was the final date on which [Shane] corresponded to Bunzl that [he] would not sign the Representative Agreement." J.A. at 288 (May 9, 2001 Letter from Bunzl to Shane). Bunzl stated, "[j]ust as [we] could not force you to continue to work for Bunzl in perpetuity, Bunzl has no obligation to pay you commissions in perpetuity." J.A. at 288 (May 9, 2001 Letter).

Shane obtained leave to file a first amended complaint and then a second amended complaint. Bunzl filed a motion to dismiss the second amended complaint on January 25, 2002. On January 30, 2002, the district court extended the discovery deadline through March 31, 2002. On February 21, 2002, the district court denied Shane's motion to compel discovery, finding that Shane's discovery requests were "significantly overbroad." J.A. at 226–28 (Feb.2002 Discovery Order). On August 7, 2002, the district court granted Bunzl's motion to dismiss in part and dismissed the majority of Shane's claims. On November 12, 2002, the district court denied Shane's motion to alter, amend, or vacate the August 2002 judgment, or, in the alternative, for leave to file a third amended complaint. The magistrate judge conducted an oral argument by telephone in January 2003 on the issue of whether further discovery was needed, and after the parties briefed the issue, the magistrate judge denied Shane's motion to extend the discovery deadline in June 2003. In November 2003, the district court denied Shane's motion for summary judgment on his fraud and equitable-estoppel claims and also affirmed the magistrate judge's order denying an extension of discovery. On July 22, 2004, the district court granted Bunzl's motion for summary judgment on Shane's fraud and equitable-estoppel claims. On December 21, 2004, the district court denied Bunzl's motion for summary judgment on Shane's breach-of-contract claim contained in Count III of Shane's second amended complaint and defined two issues of fact that remained for the jury to consider.[1] After a six-day trial, the jury returned a verdict for Bunzl. On January 31, 2005, the court entered judgment for Bunzl, and Shane was later or-

---

1. The two factual issues remaining were "whether Shane has been paid for the agreed upon 'sales for Mexico'" and "the rate of commission Shane was to be paid on [Bunzl's] domestic sales." J.A. at 103 (Dec. 21, 2004 Order at 6).

dered to pay Bunzl's court costs. Shane filed a notice of appeal, citing seven final orders that he wished to challenge on appeal.

## II. ANALYSIS

When we are sitting in diversity, "we apply the law, including the choice of law rules, of the forum state," which is in this instance Kentucky. *Himmel v. Ford Motor Co.,* 342 F.3d 593, 598 (6th Cir.2003). If we confront an issue that "has not yet been resolved by the [Kentucky] courts, we must attempt to predict what the [Kentucky] Supreme Court would do if confronted with the same question." *Id.* We review de novo the district court's applications and determinations of Kentucky law. *Salve Regina Coll. v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

## A. Dismissal of Shane's Contract Claims

■ Shane's first issue raised on appeal is that the district court erred when, in its August 7, 2002 order, it dismissed several of his breach-of-contract claims which asserted that he was entitled to commissions from Bunzl as long as Bunzl did business with Wal–Mart. These contract claims were raised in Count I and Count II of the second amended complaint, and both were dismissed by the district court because the court concluded that Shane "cannot identify the contractual terms beached." J.A. at 69 (Aug. 7, 2002 Order at 3). Shane invited the district court to consider Bunzl's motion to dismiss as a motion for summary judgment and attached supplemental evidence to his motion in opposition to Bunzl's motion. The district court declined to consider matters outside Shane's pleading and therefore considered Bunzl's motion as a Rule 12(b)(6) motion to dismiss. We review de novo the propriety of a district court's dismissal of a claim pursuant to Rule 12(b)(6). *Murphy v. Sofa-*

*mor Danek Group, Inc. (In re Sofamor Danek Group, Inc.),* 123 F.3d 394, 400 (6th Cir.1997). "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 360 (6th Cir.2001).

The district court dismissed Shane's breach-of-contract claims in Count I and II of his second amended complaint because it concluded that Shane's second amended complaint did not sufficiently identify the contractual terms that he alleged had been breached. Although Shane alleged that Bunzl had breached its contract "by improperly terminating that contract," (Count I) "ceasing to make continuing commission payments to Shane," (Count I) and not paying Shane "the proper amount of commissions" on the rebate amounts Bunzl received (Count II), J.A. at 49 (Second Amd. Compl. at ¶¶ 26, 33), the district court found that Shane had not alleged in his complaint that these were required by the terms of Shane's contract with Bunzl. In essence, the district court found that Shane had alleged a breach of contract without alleging the existence of the contractual terms that required Bunzl to perform those acts. Shane's complaint only referenced the May 5, 1995 Letter Agreement as the source of the specific terms of his agreement with Bunzl. Upon review, we conclude that the district court's reasoning in dismissing Shane's breach-of-contract claims in Counts I and II was sound because, as pleaded in the second amended complaint, these contract allegations fail to state a claim for which relief can be granted.

■ While Shane is correct that he stated in his complaint that Bunzl's obligations arose from the May 5 Letter Agreement

"and the conduct and promises of Defendant before and after May 5, 1995," Shane did not allege in Counts I and II any additional terms of his purported contract with Bunzl beyond those in the May 1995 Letter Agreement. J.A. at 46 (Second Amd. Compl. at ¶ 9). It was therefore proper for the district court to treat the contract terms in the May 5 Letter Agreement as the entire contract between Shane and Bunzl.[2] Under Kentucky law, a cause of action for breach of contract must state "the contract, the breach and the facts which show the loss or damage by reason of the breach." *Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952). Shane's complaint fails to state a claim for which relief can be granted because it failed to state any contractual basis for his claim that he was entitled to commissions from Bunzl in perpetuity or that Bunzl was unable to terminate their agreement at will. The district court correctly concluded that, because it lacked any term about its duration, the May 1995 Letter Agreement is terminable at will by either party under Kentucky law. "The rule in [Kentucky] is that if a contract covers no definite period, it may be terminated by either party at will." *Elec. & Water Plant Bd. v. S. Cent. Bell Tel. Co.*, 805 S.W.2d 141, 143 (Ky.Ct.App.1990). "Kentucky law does not favor contracts running into perpetuity." *Id.* "The general rule is that a construction conferring a right in perpetuity will be avoided unless compelled by the unequivocal language of the contract." *Mid–Southern Toyota, Ltd. v. Bug's Imports, Inc.*, 453 S.W.2d 544, 549 (Ky.1970). Shane's complaint is insufficient as a matter of law on these breach-of-contract claims, and so we affirm the district court's dismissal of Shane's contract claims in Count I of his second amended complaint.

Similarly, although Shane alleges that Bunzl breached the contract by failing to take into account any rebate amounts Bunzl received from its suppliers when calculating his commission rate, he did not allege the existence of this contractual term in his complaint, and like his Count I claim to commissions in perpetuity, such a provision does not appear in the May 1995 Letter Agreement. Instead, the agreement only refers to paying Shane a commission on "sales," which Bunzl did. J.A. at 224–25 (May 5, 1995 Letter). Kentucky courts do not consider extrinsic evidence as to the parties' intentions unless the terms of the written agreement are ambiguous. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky.2003). An unambiguous written agreement " 'will be enforced strictly according to its terms,' and a court

---

2. We remain unpersuaded by Shane's argument that the district court's conclusion that the May 1995 letter was the entire agreement of the parties was a "gross over-simplification of the parties' contractual relationship," and that this was a failure to construe liberally Shane's complaint as required. Appellant Br. at 21, 18. Shane alleges on appeal that oral agreements between himself and Bunzl that occurred prior to the May 1995 letter also constitute terms of his contract. To support this claim, Shane refers this court to paragraphs from his Count IV fraud claim in his second amended complaint as evidence that he had alleged in his complaint that oral statements extraneous to the May 1995 letter constituted part of his contract with Bunzl. Appellant Br. at 18. A careful reading of Shane's pleading, however, reveals that Shane referred to these alleged statements as "representations" and "express[ions]," rather than contractual terms, and Shane did not present these statements as part of his Count I and Count II contract claims. Shane's characterization of these statements differs from Shane's repeated references to his "agreement" with Bunzl in his contract claims, which further undercuts Shane's claims that he presented these oral statements as part of the alleged contractual terms in his complaint. *See, e.g.*, J.A. at 49 (Second Amd. Compl. at ¶ 29) (referring to "the agreement").

will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Id.* (footnotes omitted). A contractual provision is ambiguous if it is reasonably "susceptible to inconsistent interpretations." *Transp. Ins. Co. v. Ford,* 886 S.W.2d 901, 905 (Ky.Ct.App.1994). The term "sales" does not appear to meet Kentucky's requirement for ambiguity such that extrinsic evidence must be considered, and therefore the district court was correct when it declined to consider extrinsic evidence about the nature of the contract between Bunzl and Shane. As Shane's complaint fails to allege that Bunzl was obligated by the terms of the contract to take into account rebates it received when calculating Shane's commission rate, his claim that Bunzl's failure to pay him commissions on the post-rebate margin constituted a breach of contract fails as a matter of law. We affirm the district court's dismissal of Shane's breach-of-contract claim contained in Count II of his second amended complaint.

## B. Dismissal of Shane's Quasi–Contract Claims

■ In its August 7, 2002 order, the district court also dismissed Shane's quasi-contractual claims—promissory estoppel and unjust enrichment—contained in his second amended complaint. In short, the district court found that both claims failed as a matter of law because the quasi-contractual claims were based upon the same performances at issue in Shane's breach-of-contract claims. J.A. at 72–73 (Aug. 7, 2002 Order at 6–7). Shane appeals the dismissal of his quasi-contractual claims, arguing that he has pleaded valid claims and that the district court erroneously relied upon distinguishable precedent. Appellant Br. at 33. We review de novo the dismissal of these claims. *In re Sofamor Danek Group,* 123 F.3d at 400.

## 1. Promissory Estoppel

Under Kentucky law, a claim of promissory estoppel requires: (1) conduct that amounts "to a representation or concealment of material facts"; (2) known to the estopped party (Bunzl); (3) unknown to the other party (Shane); (4) "[t]he estopped party must act with the intention or expectation [that its] conduct will be acted upon"; and (5) "the other party in fact relied on this conduct to his detriment." *McCarthy v. Louisville Cartage Co.,* 796 S.W.2d 10, 12 (Ky.Ct.App.1990). Shane's promissory-estoppel claim, which is Count VII of his second amended complaint, contains all of these necessary elements. J.A. at 54–55 (Second Amd. Compl. at ¶¶ 67–77). Nevertheless, the district court dismissed this claim because it held that estoppel could not be the basis for Shane's claim because the estoppel claim is based upon the same performance that was contemplated under the May 1995 written contract. Upon review, we conclude that the district court's reasoning was sound, and we affirm.

The district court relied upon *Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.,* 898 F.Supp. 1198, 1205 (W.D.Ky. 1995), as support for the principle that "estoppel cannot be the basis for a claim if it represents the same performance contemplated under a written contract." *Tractor & Farm* granted summary judgment to the defendant on the plaintiff's promissory-estoppel claim because the district court found that the plaintiff's performance that was allegedly induced was the same action that the parties' written contract required of the plaintiff. *Id.* at 1205–06. *Tractor & Farm* in turn relies upon *General Aviation, Inc. v. Cessna Aircraft Co.,* 915 F.2d 1038 (6th Cir.1990), in which we affirmed summary judgment for the defendant because we held that the plaintiff cannot rely upon the doctrine of

promissory estoppel to recover when that claim is based upon the same performance that represented consideration for a written contract between the parties. *Id.* at 1042. " 'Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract.' " *Id.* (quoting *Walker v. KFC Corp.,* 728 F.2d 1215, 1220 (9th Cir.1984)). While *General Aviation* was a diversity suit involving Michigan law, we relied upon a Ninth Circuit precedent applying California state law when adopting the above premise in *General Aviation.* The district court in *Tractor & Farm* then adopted the principle without any analysis of Kentucky law. Although the case at bar is a diversity suit where Kentucky law applies, the district court here applied *Tractor & Farm* and *General Aviation* without comment or reference to Kentucky law.

We are not aware of any Kentucky state-court decision that recognizes, applies, or rejects the *General Aviation* principle that a promissory-estoppel claim cannot be based upon a performance that is contractually required. We must therefore "attempt to predict what the [Kentucky] Supreme Court would do if confronted with the same question." *Himmel,* 342 F.3d at 598. Given that it is a "widely accepted principle that promissory estoppel is applicable only in the absence of an otherwise enforceable contract," *Heating & Air Specialists, Inc. v. Jones,* 180 F.3d 923, 934 (8th Cir.1999) (citing numerous state courts so holding), we predict that the Supreme Court of Kentucky would also apply this principle. Given that the district court correctly determined that the May 1995 letter was an express, enforceable contract and constituted the entirety of the agreement between Shane and Bunzl, Shane may not also rely upon the doctrine of promissory estoppel. We affirm the district court's dismissal of Shane's promissory-estoppel claim.

**2. Unjust Enrichment**

■ The district court's dismissal of Shane's unjust-enrichment claim was proper for the same reasons. The facts alleged in Shane's unjust-enrichment claim mirror those alleged in his breach-of-contract claim. J.A. at 58–59 (Second Amd. Compl. at ¶¶ 99–119) (like the breach-of-contract claims, referring in ¶ 101 only to Shane's rights "[p]ursuant to the May 5 Letter Agreement and the conduct and promises of Defendant before and after May 5, 1995"). The district court correctly concluded that Shane's unjust-enrichment claim was barred as a matter of law because it was "based on the same subject matter as his breach of contract claim." J.A. at 73 (Aug. 7, 2002 Order at 7). Under Kentucky law, "[t]he doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Codell Constr. Co. v. Kentucky,* 566 S.W.2d 161, 165 (Ky.Ct.App.1977). *See also Johnson Controls, Inc. v. Jay Indus., Inc.,* 459 F.3d 717 (6th Cir.2006) (affirming district court's conclusion that under Michigan law, an unjust enrichment claim is impermissible when express contract found). As we have affirmed the district court's interpretation of the May 1995 letter as an explicit contract and *the* agreement between the parties, we therefore affirm the dismissal of Shane's unjust-enrichment claim.

**C. Dismissal of Shane's Claims for Commissions from Stores Other Than Wal–Mart Super Centers**

Shane next appeals the December 21, 2004 judgment of the district court granting summary judgment to Bunzl on Shane's claim that he was entitled to commissions on all of Bunzl's sales to Wal–

Mart–affiliated stores, rather than only to Wal–Mart Super Centers. Shane argues that the term "Wal–Mart" in the 1995 contract entitled him not only to commissions from Wal–Mart Super Centers, but also from "Sam's Club, [ordinary] Wal–Mart retail stores, and the Neighborhood store concept." Appellant Br. at 40. The district court called this argument a "red herring," and found that the only domestic stores contemplated in the agreement for which Shane's help was desired were Wal–Mart Super Centers. The court therefore granted summary judgment to Bunzl on this claim. J.A. at 101–103 (Dec. 21, 2004 Order at 4–6).

We review de novo a district court's grant of summary judgment. *Cotter v. Ajilon Servs., Inc.,* 287 F.3d 593, 597 (6th Cir.2002). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In support of his argument that the term "Wal–Mart" in the 1995 agreement included the other Wal–Mart affiliates, Shane relies primarily on the testimony of Rick Snellings, the signatory of the May 1995 letter. While Shane's counsel was deposing Snellings, counsel used the term "the entire Wal–Mart account," which prompted Snellings to ask what counsel meant by the term. Counsel said he meant "Sam's Club, the super centers, Wal–Mart retail stores, neighborhood concepts, that's all." J.A. at 457 (Snellings Dep. at 26). Snellings agreed that this was "[b]roadly" accurate as to all that Wal–Mart encompasses. J.A. at 457 (Snellings Dep. at 26). Counsel then asked Snellings, "So when you refer to Wal–Mart, that's what you would be referring to, would be all those concepts or everything under the Wal–Mart Stores, Inc.[?]" Snellings responded in the affirmative.

Shane now argues that this is evidence that the term "Wal–Mart" in Snellings's May 1995 letter meant all of these affiliated businesses. The record simply does not support this reading. During his deposition, Snellings was being asked about the scope of responsibility of the broker who predated Shane, and after specific prompting, agreed with Shane's counsel that that individual had been responsible for all the Wal–Mart–affiliated stores. Moreover, Snellings's request for clarification from counsel about his use of the term "Wal–Mart" as an umbrella term for all the affiliated stores suggests that Snellings did not generally think of or use the term as such. Thus even if the terms of the May 1995 agreement were ambiguous such that consideration of this extrinsic evidence was appropriate, the specific context of this testimony does little to bolster Shane's more general claim about the meaning of "Wal–Mart" in the 1995 letter. However, the district court is correct that, when speaking of Bunzl's interest receiving Shane's help with generating new domestic business, the May 1995 agreement is unambiguous in that it referred only to "Wal–Mart Super Centers (all departments)" and did not use the more general term "Wal–Mart." J.A. at 102–03 (Dec. 21, 2004 Order at 5–6); J.A. at 224–25 (May 5, 1995 Letter at 1–2). Shane has not presented any evidence to create a genuine issue of material fact on this argument, and so we affirm the district court's grant of summary judgment to Bunzl on this claim.

**D. Denial of Shane's Motion For Leave to File Third Amended Complaint**

 Next, Shane argues that the district court abused its discretion when, in a

November 12, 2002 order, it denied his motion for leave to file a third amended complaint at the same time that it denied his motion to alter, amend, or vacate the dismissal of most of his second amended complaint. J.A. at 80 (Nov. 12, 2002 Order). Rule 15(a) requires leave to amend to be "freely given when justice so requires." Fed.R.Civ.P. 15(a). Denial of leave to amend may be appropriate when there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Shane is correct that when, as here, a district court denies a motion for leave to file an amended pleading without any "apparent or declared" explanation, the district court has abused its discretion. *Id.* "[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*

This error is harmless if it would have been futile for the district court to have allowed Shane to file a third amended complaint. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir.2000). "[A] proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Id.* at 421. Shane's third amended complaint, however, directly responds to the district court's reasons for dismissing his contract claims in Counts I and II, and so the proposed amendment would not have been futile. Therefore under *Foman*, the district court did abuse its discretion in denying without explanation Shane's motion for leave to file a third amended complaint, and this error did not constitute harmless error, and so we VACATE the November 12, 2002 order in

pertinent part and REMAND this issue for further consideration and explanation by the district court.

### E. Refusal to Extend Discovery Deadline

■ Shane also appeals the district court's November 18, 2003 denial of his request to extend the discovery deadline. We review a denial of a party's motion to extend a discovery deadline for abuse of discretion, and "[w]e will find an abuse of discretion only upon a definite and firm conviction that the trial court committed a clear error of judgment." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1114 (6th Cir.2001) (internal quotation marks omitted). From our review of the record, we are convinced that this standard has not been met. The magistrate judge had twice previously extended the discovery deadline. Shane had scheduled and then, apparently because as a matter of trial strategy he desired to have Bunzl's interrogatory responses before he conducted depositions, Shane canceled several depositions of Bunzl's officers, and he failed to re-notice the depositions before the March 31, 2002 discovery deadline. J.A. at 361 (Magistrate Order June 2003 at 1). In rejecting Shane's motion for more discovery time, the magistrate judge found that Shane had not specifically stated what additional discovery he wished to take, nor sufficiently explained why he failed to make his request for additional discovery in a timely manner. J.A. at 362 (Magistrate Judge Order June 2003 at 2). Shane's discovery requests were also overly broad. Although the magistrate judge had "admoni[shed]" Shane late in 2002 that any additional discovery requests must be "focused, narrow, and limited," Shane's requests in his 2003 motion for additional discovery were "unduly broad and expansive." J.A. at 362–63 (Magistrate Order June 2003 at 2) (referring, as

an example, to a broad document request "of questionable relevance" made by Shane). As Bunzl points out, Shane has yet to explain what additional discovery he needs or why he waited so long to renew his requests. Because Shane has not adequately supported his assertions that additional discovery was likely to produce evidence relevant to his various claims, the district court did not abuse its discretion in denying his motion for extended discovery. We affirm the district court's denial of Shane's motion to extend discovery.

### F. Dismissal of Shane's Fraud Claim in Count VI of Second Amended Complaint

■ Finally, Shane appeals the July 22, 2004 order of the district court granting summary judgment to Bunzl on his fraud claim in Count VI of his second amended complaint. The district court held that Shane's fraud claim failed as a matter of law. J.A. at 91–93 (July 22, 2004 Order at 2–4). Specifically, the district court found that Shane's one piece of evidence to support his fraud claim—his own deposition testimony that Bunzl chief executive officer Paul Lorenzini stated that Bunzl would pay Shane commissions as long as Wal–Mart and Bunzl did business in an alleged attempt to induce Shane to introduce Wal–Mart and Bunzl—was inadequate. *See* J.A. at 416 (Shane Dep. at 47). The court found that this evidence was legally insufficient to support Shane's fraud claim because the representation did not "pertain to present or preexisting facts," but rather to "future events or actions." J.A. at 93 (July 22, 2004 Order at 4) (citing *Res–Care, Inc. v. Omega Healthcare Investors,*

*Inc.,* 187 F.Supp.2d 714, 717 (W.D.Ky. 2001)).

Shane does not cite any legal authority in his appellate brief challenging this judgment, but instead relies heavily upon his deposition testimony about the alleged misrepresentation from Lorenzini and the fact that this claim had previously survived a motion to dismiss. Bunzl argues in response that this court should view Shane's failure to cite any case law in support of an alleged point of error as a waiver of the issue. Appellee Br. at 36. In his reply brief, Shane relies upon one Kentucky case for the proposition that a representation about future events or actions can constitute fraud if the intention is to induce another to enter into a contractual relationship. Appellant Reply Br. at 27 (citing *Schroerlucke v. Hall,* 249 S.W.2d 130 (Ky. 1952)). In *Schroerlucke,* the highest court of Kentucky recognized an exception to the general rule that fraud requires a statement about present or preexisting facts where the defendant-builder of a home informed the plaintiff-buyers that the home, partially constructed at the time, "was nicely built, with good material and with the best of workmanship possible" in order to induce the buyers to enter into a purchase contract for the home.[3] *Id.* at 130–31. After the buyers had purchased the home, they discovered many serious problems with the home and that it would cost them over $2,500 (in early 1950's dollars) to bring the home up to the standards of good workmanship and good, sound material as represented by the builder/seller. The Kentucky court took care to explain that in this instance, in which it allowed

---

**3.** While we are not aware of any subsequent published Kentucky cases that cited *Schroerlucke,* the case has been cited a handful of times by federal courts deciding issues of Kentucky law. *See, e.g., Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1447 (6th Cir.1993) (recognizing the *Schroerlucke* ex-

ception and reversing summary judgment on fraud claim when plaintiff alleged that defendant made at least six false statements to induce plaintiff to sign a guaranty agreement which resulted in over $5 million in liabilities to plaintiff).

the fraud clam to proceed, "we have representations based partly on existing facts and partly on promises in futurity which induced appellant to enter into a contract whereby appellee acquired an unconscionable and inequitable advantage." *Id.* at 132.

Upon review, we conclude that Shane has not presented evidence such that he has established that a genuine issue of material fact exists on his fraud claim. We conclude that Shane's allegations simply do not rise to the level of the "positively stated" misrepresentations in *Schroerlucke, id.* at 131, and that *Schroerlucke* is distinguishable on several grounds. First, here, unlike there, Lorenzini's alleged false representations were not partly based on existing facts, but instead were entirely based upon promises in futurity. Second, even when viewing the deposition testimony in the light most favorable to Shane, the purported dialogue between Lorenzini and Shane simply does not suggest that Lorenzini was attempting to induce Shane into a contractual relationship. A significant amount of time lapsed between this purported inducement and the 1995 contract. As the district court correctly determined, the May 5, 1995 agreement constituted the entire agreement between Shane and Bunzl. This letter agreement came at Shane's request for a written statement of the parties' agreement, J.A. at 225 (May 5, 1995 Letter at 2) (Snellings on behalf of Bunzl stating to Shane, "[h]opefully, this is what you were looking for"), and was many months after Shane alleges that this conversation with Lorenzini occurred (in September of either 1993 or 1994). *See* Appellant Br. at 54 (quoting second amended complaint but modifying date from 1994 to 1993).

Similarly, the dialogue that Shane purports to have been the fraudulent inducement also indicates that Shane, not Bunzl, was the driving force attempting to broker some sort of agreement, and it was Shane who introduced this "inducement" term of lifetime commissions. J.A. at 418 (Shane Dep. at 418) ("[A]nd I asked him specifically, if I help you get this account, will you pay me as long as you have the account. He said, absolutely."). Lorenzini's alleged response of "absolutely" to Shane's prompting that he would like his commissions to be for the lifetime of Bunzl's relationship with Wal–Mart does not rise to the level of the "positively stated" representations in *Schroerlucke* which inspired the Kentucky court to recognize an exception to the general rule that fraud requires a representation about present or preexisting facts. *Schroerlucke,* 249 S.W.2d at 131. Shane has not provided evidence such that a genuine issue of material fact remains on his fraud claim, and thus we affirm the district court's grant of summary judgment to Bunzl on this claim.

## III. CONCLUSION

We **AFFIRM** the district court's dismissal of Shane's contract, fraud, and quasi-contractual claims, as well as the district court's denial of Shane's motion to extend further the discovery deadline. We **VACATE** the district court's denial of Shane's motion for leave to file a third amended complaint, because the district court's failure to explain its reasons for denying this motion was an abuse of discretion. We **REMAND** this one issue to the district court for further consideration in accord with this opinion.