NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0054n.06

No. 17-5975

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NASH-FINCH CO.; SUPER FOOD SERVICES, INC.,

    Plaintiffs-Appellees,

v.

CASEY'S FOODS, INC.; KCR LTD., INC.; C&S FOODS, INC.; MANCHESTER, INC.; CDM FOODS, INC.; J&L COX, LLC; JIMMY R. COX; LISA C. COX,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

December 20, 2018

DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

**REDACTED OPINION**[*]

BEFORE: DAUGHTREY, GIBBONS, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** In this breach-of-contract diversity action, Defendants-Appellants appeal the district court's grant of summary judgment to Plaintiffs-Appellees Nash-Finch Co., and Super Food Services, Inc., and the dismissal of their counter-claims. We AFFIRM.

Nash-Finch Co., and its wholly-owned subsidiary Super Food Services, Inc. (collectively, Nash-Finch), distribute wholesale groceries and supplies to independent grocery stores; the six corporate Appellants are affiliated businesses that own and operate thirteen IGA grocery stores in

---

[*]This decision was originally filed under seal on December 20, 2018. On January 30, 2019, the court unsealed the opinion with redactions made pursuant to Appellees' unopposed motion. The date the opinion is deemed to have been filed remains December 20, 2018.

eastern Kentucky. The parties entered into a ten-year Retail Sales and Service Agreement (RSSA) effective February 27, 2008, under which Nash-Finch agreed to supply Appellants' grocery stores, and Appellants agreed, among other things, to purchase ▮▮▮▮▮ of their annual retail sales volume from Nash-Finch.

**RSSA's REBATEABLE LOAN ARRANGEMENT**

Two programs are pertinent to this dispute. The first is the rebateable loan arrangement outlined in the RSSA. Pursuant to the RSSA, Nash-Finch extended loans to several Appellants[1]: a ten-year term loan ▮▮▮▮▮▮▮▮▮▮, and a five-year term loan ▮▮▮▮▮▮▮▮▮. Three prior loans, referred to as the "3 Original Notes," were also part of the RSSA. Two of these three loans were "rebateable," that is, Appellants could pay them off through a rebate ▮▮▮▮▮▮ ▮▮▮, provided Appellants met ▮▮▮ purchase requirement. If Appellants purchased ▮▮▮ of their inventory from Nash-Finch, the rebate would decrease. In the event the RSSA was terminated, Appellants were required to immediately pay Nash-Finch any outstanding loan amounts as well as liquidated damages.

When Appellants terminated the RSSA on February 27, 2015, their outstanding loan balance was ▮▮▮; Appellants paid Nash-Finch ▮▮▮, but withheld ▮▮▮ assuming they had earned that amount as a rebate. Nash-Finch maintains Appellants were entitled only to a ▮▮▮ rebate because their purchase level was ▮▮▮ and that Appellants owe liquidated damages for wrongly terminating the RSSA.

---

[1] Nash-Finch refers to the corporate Appellants as the "Cox Appellants," and the district court referred to them as the "Cox Defendants." Individual Appellants Jimmy and Lisa Cox, and corporate Appellants Casey's Foods, J&L Cox, and C&S Foods, are the guarantors of the loans.

## EVERY DAY VALUE (EDV) TOTAL MERCHANDISING PROGRAM

The second program pertinent to this dispute is a total merchandising program Nash-Finch implemented in 2009. Under the RSSA, Nash-Finch agreed to "have services and programs available to" Appellants and other grocers, "subject to applicable charges and the right of Super Food to make changes at any time as to their cost, nature and availability." (R. 43-2, PID 220.) The RSSA provides a list of such services and programs, including a "Total Merchandising Program." Partly in response to Appellants' and other grocers' requests to be more competitive with super stores like WalMart, Nash-Finch developed a total merchandising program in 2008, the "Every Day Value Program" or "EDV," ████████████████████████████.[2]

████████████████████████████████████████

██████████████████. Nash-Finch employee James Gohsman, who oversaw Appellants' accounts, testified that "[i]n the Nash platform, we called it EDV . . . . [In other geographic areas] it's called Price Freeze and Wall of Value, so it's the same deal, it's just called something different." (R. 100-2, PID 631.) The EDV program is not discussed in the RSSA.

In June 2009, Nash-Finch met with independent retailers including Martin Cox,[3] President of Appellant KCR Ltd., to discuss implementing EDV. ████████████████████████████. In mid-2009, Nash-Finch implemented EDV. As part of the program, Nash-Finch

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████.

---

[2] ████████████████████████████████████████.

[3] Cox signed the RSSA, terminated the RSSA in February 2015, and served as the Federal Rule of Civil Procedure 30(b)(6) designee for the Corporate Appellants.

Prior to implementing EDV, Nash-Finch ██████████████████████████.

Under EDV, Nash-Finch ████████████████████████████████.

According to Nash-Finch, as designed

███████████████████████████████████████████████████████

████████████.

By letter to Nash-Finch dated February 27, 2015, Cox advised that as of March 4, 2015, Appellants were switching suppliers, that is, ending their participation in the RSSA:

As you know, I have been reviewing the financial condition of our stores. I have given notice to several different members of your management team outlining the financial damages to the Cox Food Group directly relating to decisions made by [Nash-Finch], those decisions have made it financially impossible for us to continue our relationship.

On March 3, 2015 Cox Foods will initiate a wire to [Nash-Finch] in the amount of ██████████ for the remaining portions of the unearned or unpaid amounts of our agreements as follows:

- ████████████████████████████████████████████
- ████████████████████████████████████████████
- ████████████████████████████████████████

As many of you are aware, I began discussing these decisions with different individuals from your company back in March 2014 . . . ███████████████████████████████████████████████████████████████

[]  In January of 2011, Nash Finch's prior CEO (Alec Covington) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

The decisions to institute the following programs introduced by Nash Finch



. . . .

This has not been an easy decision; but if we don't make a change, I know our stores are not financially viable.  As of March 4, 2015 we will be switching suppliers.  All other open Account Payables will be paid to Nash Finch on their existing schedule.

Over the years, we have honored our commitments with Nash Finch.  I believe our offer to repay any monies that were advanced to us, and our open accounts, is a fair way to resolve our differences and end our relationship.

(R. 100-4, PID 657.)

**THE INSTANT ACTION**

Believing that Cox wrongfully terminated the RSSA three years early, Nash-Finch filed this breach-of-contract action, seeking liquidated damages and the balance it claimed Appellants owed under the rebateable loan arrangement.[4]

As pertinent here, Appellants' amended Answer alleged eight[5] counterclaims arising from EDV:  breach of contract (failure to provide "a successful, reasonable and non-damaging total merchandising program"), unjust enrichment, fraud in the inducement, constructive fraud, negligent misrepresentation, promissory and equitable estoppel, and breach of contract for failure

---

[4] Nash-Finch also alleged a breach-of-confidentiality and tortious-interference-with-a-contractual-relationship claim, but agreed not to pursue that claim so that the district court could resolve the case on summary judgment.

[5] Because Appellants failed to oppose Nash-Finch's motion for summary judgment on the breach-of-oral-contract, negligence, and gross-negligence counterclaims, the district court concluded those counterclaims were abandoned.  Appellants do not appeal the dismissal of those counterclaims.

to timely deliver goods in an undamaged, clean and healthy condition.  (R. 70, PID 470-76.)  The gravamen of Appellants' counterclaims was that Nash-Finch was the first to breach the RSSA.

Following discovery, Nash-Finch moved for summary judgment on its breach-of-contract claim and on Appellants' counterclaims.  The district court rejected Appellants' argument that Nash-Finch breached the RSSA first and granted Nash-Finch summary judgment on its breach-of-contract claim.  The district court dismissed Appellants' counterclaims, and later denied Appellants' motion to vacate, alter or amend the judgment.  This appeal followed.

## I.

Appellants first challenge the district court's grant of summary judgment to Nash-Finch on its breach-of-contract claim, asserting that factual issues remained regarding whether Nash-Finch breached the RSSA first, thus excusing Appellants' failure to perform under the RSSA.  Appellants argue that Nash-Finch breached the RSSA when it ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ███████:

> Without the benefit of ███████████████████████████.  If nothing else, ██████████████████████████████████████████████████.  At some point, █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████.  When the beneficial effects of the program cease to exist and the program becomes ineffectual, it is no longer operational and has ended.
>
> When presented to retailers, the EDV Program was the ██████████████████████████████████████████████████████████████ ████████████████████████████████.  However, as the benefits of the EDV Program slowly fell apart the Appellees ████████████████████████.  As Tony Bender [then a Nash-Finch retail counselor] testified, the Program initially offered ███████████████████████████████████████████.  [Martin] Cox said this ████████████████████████████████████████████████ ██████████████████.

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████.

(Appellants' Br. at 13-14.)  Cox testified that his stores "were fine" until around August 2012,

████████████████████████████████████████████████████████████████.

(R. 100-1, PID 622.)

Appellants also maintain that questions of fact remained regarding whether participation in EDV was mandatory and, if it was, whether EDV should be treated as part of the RSSA and obligated Nash-Finch to create a functional program.  Appellants assert that the RSSA is ambiguous because it is unclear whether it encompassed the EDV program and fact questions remained whether the RSSA permitted increased distribution fees.  Finally, Appellants assert that questions of fact remained whether the RSSA is unconscionable.

Nash-Finch does not dispute that after EDV's implementation in mid-2009:  1) the number of ████████████████████████████████████████████████.  Nash-Finch explains that because it

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████.

**A.**

Kentucky substantive law applies in this diversity-jurisdiction case.  *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001).  The Federal Rules of Civil Procedure apply to civil actions in federal courts, under which we review a grant of summary judgment de novo, viewing the evidence in the light most favorable to Appellants, the non-movants.  *Id.*

Under Kentucky law, "[w]here a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2001). If there is no ambiguity, "the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Id.* "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Id.*

The party first breaching a contract "cannot complain if the other party thereafter refused to perform." *Hall v. Rowe*, 439 S.W.3d 183, 187 (Ky. Ct. App. 2014) (quoting *Dalton v. Mullins*, 293 S.W.2d 470, 476 (Ky. 1956)); *see also O'Bryan v. Mengel Co.*, 6 S.W.2d 249, 251 (Ky. 1928) ("No principle in the law of contracts is better settled than that the breach of an entire indivisible contract in a material particular excuses further performance by the other party and precludes an action for damages on the unexecuted part of the contract.").

An unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 (Ky. Ct. App. 2001).

**B.**

The district court assumed, as Appellants urged, that their participation in EDV was mandatory. Noting that it was "not unsympathetic to the grocers' plight," the district court acknowledged ███████████████████████████████ ███████████. (R. 111, PID 1325.) But after concluding that the RSSA is unambiguous, the district court determined that the RSSA permitted Nash-Finch to ████████████████████████████████████████, and that Appellants "pointed to no

legal requirement on behalf of [Nash-Finch] to implement a marketing strategy that *succeeded* or otherwise conformed to the Cox Defendants' specific needs and demands." (*Id.* at PID 1326-27.) The district court also rejected Appellants' contention that the EDV program's poor quality rendered the RSSA unconscionable, noting that Appellants provided "no legal authority or factual predicate to support their contention of unconscionability," that the RSSA's language is clear, and that Appellants are sophisticated entities. (*Id.* at PID 1328-29.)

## C.

Under paragraph 32 of the RSSA, Nash-Finch agreed to "have services and programs available to" Appellants, "subject to applicable charges and the right of Super Food to make changes at any time as to their cost, nature and availability." (R. 43-2, PID 220.) The RSSA lists a number of services and programs, including a "Total Merchandising Program." There is no dispute that EDV is a "Total Merchandising Program." (*Id.*)

On appeal, Appellants assert that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ before the EDV Program exists in name only." (Appellants' Br. at 13.) But Appellants presented no evidence that EDV ended or existed in name alone and Nash-Finch submitted deposition testimony of James Gohsman, the Nash-Finch employee who oversaw Appellants' accounts, that EDV, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, remained in place after Appellants terminated the RSSA in February 2015. Further, as the district court determined, under the RSSA's plain language, Nash-Finch was required to provide a total merchandising program such as EDV, but was allowed to change the costs affiliated with EDV. And the RSSA did not obligate Nash-Finch to guarantee the success of the EDV program or to change or alter the program if retailers were dissatisfied with it.

Appellants also take issue with the district court's determination that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were permitted under the RSSA, pointing to the deposition testimony of former Nash-Finch employee Gary Crawford, who serviced Appellants' account, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Paragraph ¶ 13 of the RSSA, titled "Pricing," required that Appellants pay "distribution fees:"

> B. Distribution fees (not including freight) shall be paid by Corporations in accordance with the current Super Food fee schedule (which is on a floating week-to-week schedule), as it may be amended by Super Food from time to time.

(R. 43-2, PID 216.) Crawford testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, ¶ 54 of the RSSA states that the parties made "no representations, warranties, covenants or promises" other than contained in the RSSA. (*Id.* at PID 227.) And, after reviewing ¶ 54 at his deposition, Crawford acknowledged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Also without merit is Appellants' assertion that Nash-Finch failed to accurately disclose a key component of EDV, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The PowerPoint presentation Nash-Finch presented to retailers in 2009 states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (R. 100-11, PID 744); the topic was discussed during the presentation; and Martin Cox testified that he understood the need to lower labor costs under EDV.

Appellants' claim that Nash-Finch's proposed interpretation of the RSSA is unconscionable because "[Nash-Finch and Super Food] believe that they can sculpt a contract for which they cannot be held liable for breaching" (Appellants' Br. at 22-23.) is unsupported by citation to authority or citation to the record.

For these reasons, we affirm the district court's determination that Appellants failed to establish that Nash-Finch was the first to breach the RSSA.

## II.

Appellants' breach-of-contract counterclaim based on untimely deliveries was properly dismissed. Appellants submitted no evidence to support their claim that when the warehouse from which they received deliveries was changed from Cleveland to Lima, Nash-Finch's deliveries were untimely or damaged. Moreover, the RSSA required Appellants to provide written notice of delayed or damaged deliveries,[6] and Appellants provided no evidence of such notice. The district court correctly determined that summary judgment was proper on this counterclaim.

---

[6] Paragraph 27 of the RSSA provides:

> 27. **Super Food On-Time Deliveries**. Super Food shall make timely deliveries of quality Product with acceptable fresh code dating, undamaged and in clean and healthy condition . . . . Corporations can declare Super Food in breach of this Agreement ███████████████████████████ of the deliveries in the aggregate for all Stores ████████████████████████████████.
>
> If for any thirty (30)-day period, ███████████████████████████ by Super Food for all Stores are ███████████, corporations shall provide written notice of such fact within five (5) days following expiration of the 30-day period, such notice given both (i) pursuant to Section 46 herein, plus (ii) fax notification on the same day.
>
> If following such notice, █████████ Super Food's deliveries in the aggregate for all Stores are ████████████ the full 60-day period, then corporations can terminate this Agreement following expiration of the 60 days upon both (i) giving a second written notice pursuant to Section 46 herein, which notice shall specify the date of termination, and (ii) complying with the terms of Section 38B herein.
>
> Under this Section, delivery is not late if (i) the truck arrives within the allotted ████████ after its originally scheduled arrival time, (ii) the delay was caused by Corporations or its employees, agents or contractors, or (iii) Corporations fail to fulfill its obligations under this Section.

(R. 43-2, PID 218.)

RSSA Section (¶) 46 provides the addresses written notice should be sent to, method of mailing, etc. Section (¶) 38(B) explains that, in the event of a Super Food Uncured Default, corporations may terminate the RSSA upon giving written notice, paying the remaining unpaid principal balance and accrued interest of any loans, and paying the then-owed open account balance on the effective date of termination.

## III.

Appellants challenge the district court's determination that the economic-loss doctrine barred their counterclaims for fraud in the inducement, constructive fraud, and negligent misrepresentation, stating, "these claims which are plead [sic] in the alternative, will arise if the activities plead [sic] in fact occurred outside the scope of any contractual agreement." (Appellants' Br. at 25-26.)

The economic-loss rule provides that "[d]amages for injuries to persons or other property may be recovered in tort but a case involving purely economic losses requires resort to the parties' contract and any express or implied warranties." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011). Appellants correctly observe that Kentucky courts have discussed the economic-loss rule in limited contexts, including product liability and construction claims. The district court similarly noted that the Kentucky Supreme Court "has yet to fully define the contours of Kentucky's economic loss rule." (R. 111, PID 1330.)[7]

Because Appellants' fraud and misrepresentation counterclaims fail on the merits without regard to the economic-loss rule, we affirm the dismissal on an alternative basis. To establish fraud in the inducement, Appellants must show by clear and convincing evidence that Nash-Finch made a material representation that is false; Nash-Finch knew of its falsity or made the

---

[7] The district court noted that several federal courts applying Kentucky law have applied the economic-loss doctrine to preclude fraud and negligent misrepresentation claims. (R. 111, PID 1330-31 (citing *Ashland Hosp. Corp. v. Provation Med., Inc.*, No. 14-444-DLB-EBA, 2014 WL 5486217, at *4 (E.D. Ky. Oct. 29, 2014) ("Given the Kentucky Supreme Court's rather broad application of the economic loss doctrine, as well as the close relationship between fraud and negligent misrepresentation claims, this Court is now confident in predicting the Kentucky Supreme Court would extend the economic loss rule to fraud claims."); and *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 955, 968 (W.D. Ky. 2007) (economic loss doctrine "precludes a plaintiff from recovering under a fraud theory when that claim is intertwined with a breach of contract claim.").) The district court concluded that the economic-loss doctrine precluded Appellants' fraud and misrepresentation claims.

representation recklessly; Nash-Finch intended the representation to be acted upon; Appellants acted in reliance on the representation; and that reliance operated to Appellants' detriment. *See Bear, Inc. v. Smith*, 303 S.W.3d 137, 142 (Ky. Ct. App. 2010); *see also Martinez v. Bruner Land Co., Inc.*, No. 2014-CA-001312-MR, 2016 WL 6543626, at *5 (Ky. Ct. App. Nov. 4, 2016). Additionally, to support an allegation of fraud, a misrepresentation must be made concerning a present or pre-existing fact, and not a promise to perform in the future. *Bear, Inc.*, 303 S.W.3d at 142.

Constructive fraud "arises from the breach of a legal duty which the law would pronounce fraudulent because of its tendency to deceive others, violate confidence, or injure public interest." *Kendrick v. Bailey Vault Co., Inc.*, 944 S.W.2d 147, 150 (Ky. Ct. App. 1997).

Kentucky has adopted the standards for negligent misrepresentation set forth in § 552 of the Restatement (Second) of Contracts:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 581 (Ky. 2004).

Because Appellants submitted no evidence that Nash-Finch made a material misrepresentation, or false or fraudulent statement about EDV to induce Appellants to participate in the program, their counterclaims of fraud in the inducement, constructive fraud, and negligent misrepresentation were properly dismissed.

**IV.**

To prevail under the theory of unjust enrichment, a party must prove three elements: (1) a benefit conferred on the defendant at the plaintiff's expense; (2) a resulting appreciation of benefit

by the defendant; and (3) the inequitable retention of the benefit without payment for its value. *Guerin v. Fulkerson*, 354 S.W.3d 161, 165 (Ky. Ct. App. 2011). However, "the doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977).

The district court dismissed the unjust-enrichment counterclaim because the RSSA governed the relationship and the claim. We find no error.

**V.**

Although Kentucky courts have not addressed the question, this court, applying Kentucky law, has held that promissory estoppel "cannot be the basis for a claim if it represents the same performance contemplated under a written contract." *See, e.g., Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 403 (6th Cir. 2006) (predicting that since "it is a widely accepted principle that promissory estoppel is applicable only in the absence of an otherwise enforceable contract, . . . the Supreme Court of Kentucky would also apply this principle") The district court dismissed Appellants' promissory estoppel counterclaim in light of the RSSA.

Regardless, this counterclaim fails on the merits. Promissory estoppel involves "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance [and] is binding if injustice can be avoided only by enforcement of the promise." *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009). Appellants argued below that Nash-Finch's most injurious act was not the implementation of EDV but the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮. Appellants thus argued that a question of fact remained whether Nash-Finch "either promised results or otherwise made false representations . . . regarding the requirements and benefits of the EDV Program." (R. 104, PID PID 1082-83.) However, Appellants presented

no evidence that they relied to their detriment on any representation Nash-Finch made regarding the EDV program.

## VI.

"[E]quitable estoppel requires both a material misrepresentation by one party and reliance by the other party." *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 595 (Ky. 2012). Equitable estoppel "is a defensive doctrine founded under the principles of fraud, under which one party is prevented from taking advantage of another party whom it has falsely induced to act in some injurious [or] detrimental way." *Id*. at 594-95.

The district court correctly dismissed Appellants' equitable-estoppel counterclaim because it rests on the proposition that Nash-Finch misrepresented or failed to inform them of the necessity to decrease labor costs, a claim we rejected in § I.C.

## VII.

Appellants' amended notice of appeal states that they also appeal the district court's order denying their motion to alter or amend judgment, but Appellants make no argument addressing that order.

For the reasons stated, we AFFIRM the district court's judgment in all respects.